## OTTO v. DOTY ET AL.

1. **Will**: INSANITY: SPIRITUALISM. The fact that one was a spiritualist is not of itself sufficient ground for setting aside his will for want of capacity to make it.

2. **Foreign Will**: PROBATE OF: EVIDENCE. The authenticated record of the probate of a will by a foreign court, showing the will, and the action of the court in probating the same, is the evidence contemplated by section 2351 of the Code for the probate of a foreign will in this state, and though not conclusive, it is, in the absence of any evidence to the contrary, sufficient. Where the courts of a sister state have jurisdiction, their mode of procedure will be presumed to be regular.

3. ——: TITLE UNDER VESTS AT DEATH OF TESTATOR. Where one takes title to land in this state by virtue of a foreign will, his title vests at the death of the testator, and he may begin an action for the possession of the land before the will is probated in this state. It is sufficient if the will is probated here in time to be used as evidence in the case.

4. **Conveyance**: DEED: DELIVERY AFTER DEATH OF GRANTOR. A deed for land will not convey the legal title, unless it is delivered by the grantor in his lifetime. A delivery through the mail by a third person after the death of the grantor is not sufficient.

5. **Real Estate**: EQUITABLE OWNERSHIP: FACTS NOT CONSTITUTING. Upon consideration of the evidence in this case, it is *held* insufficient to establish the equitable ownership of the land in question to be in the defendant, by virtue of his alleged purchase of and payment for it.

*Appeal from Story District Court.*

WEDNESDAY, APRIL 18.

ACTION to obtain possession of a tract of land in Story county. Both plaintiff and defendants claim under one J. R. Doty, now deceased. The plaintiff claims as devisee of J. R. Doty. The defendant, J. W. Doty, claims under an alleged deed of the land from J. R. Doty. He claims, also, in case the deed should be found invalid, as the equitable owner by purchase and payment; and, in case it should be found that he is not a purchaser, he claims as father and heir of J. R. Doty. The defendants dispute the validity of the will, and the plaintiff disputes the validity of the deed, and

| | |
|---|---|
| 61 | 23 |
| 78 | 705 |
| 61 | 23 |
| 79 | 68 |
| 79 | 190 |
| 61 | 23 |
| 85 | 89 |
| 61 | 23 |
| 94 | 339 |
| 94 | 460 |
| 61 | 23 |
| 109 | 513 |
| 61 | 23 |
| f113 | 657 |
| 61 | 23 |
| 130 | 696 |
| 61 | 23 |
| 136 | 716 |
| 61 | 23 |
| 138 | 331 |

disputes, also, J. W. Doty's purchase. The action was tried as in equity, and a decree was rendered for the plaintiff. The defendants appeal.

*John L. Stevens* and *J. L. Dana*, for appellants.

*F. D. Thompson, Dyer & Fitchpatrick*, for appellee.

ADAMS, J.—J. R. Doty died in September, 1877, in Memphis, Tenn. The day before he died he made the will in question, whereby he bequeathed and devised all his property to the plaintiff, Mrs. Josephine Otto, then residing in Lousiana, but now in Wisconsin. He left no wife nor children. He had formed, as the evidence shows, a very strong attachment to Mrs. Otto, a widow, and had made to her a proposal of marriage. The defendants aver that the testator was a monomaniac on the subject of religion, and also that the execution of the will was obtained by undue influence.

Evidence was introduced showing that the testator was a spiritualist, and entertained many, if not all, of the views 1. WILL: insanity: spiritualism. peculiar to that sect. We see no other evidence of insanity; and spiritualism, so far as we are aware, has never been held to be insanity.

The allegation of undue influence is equally unsupported. The plaintiff was not with the testator at the time he died, nor at any time during his last sickness. Nor does it appear that any communication took place between them in regard to his property, nor that she ever encouraged any affection on his part which he might not lawfully cherish.

An objection is made, however, by the defendants that the will was never duly probated.

To justify the decree, it was necessary that it should appear that the will had been duly probated in the circuit court of 2. FOREIGN will: probate of: evidence. Story county. To justify probate in such court, it should have appeared that it had been duly probated in Tennessee, where it was executed, and where the

testator died.  The evidence shows that the will had been probated in the circuit court of Story county, but the defendants insist that it had not been properly probated, and they set up such fact in a cross-petition, and ask that the court set aside the probate.  They claim that they bring themselves under section 2353 of the Code, which contemplates that, where a foreign will is probated in this state, the probate may, for sufficient cause, be set aside by an original action—precisely for what cause, the statute does not point out.  The probate of a will might be set aside so far as it concerned real estate in this state, if not executed in accordance with the law of this state.  *Lynch v. Miller*, 54 Iowa, 516.  The foreign court could not be supposed to have made any adjudication upon such a question.  Whether the foreign adjudication should be deemed conclusive in respect to the testator's testamentary capacity, or in respect to the absence of undue influence, we need not determine.  The defendants' allegations in respect to a want of such capacity, and in respect to undue influence, are, as we have seen, not-sustained by the evidence.  Whether the record of the Tennessee court is duly authenticated, we need not determine, because no objection is made to the authentication.  The only objections made, aside from undue influence and want of testamentary capacity, pertain merely to the mode of proceeding in the Tennessee court.  The objections are that the will was probated without notice to the parties interested, and upon examination of only one of the subscribing witnesses.

As to the alleged want of notice, we have to say that it is not shown affirmatively, either that there was a want of notice, or that notice was necessary.  The authenticated copy of the record introduced shows the will, and the action of the court in probating the same.  Possibly, the evidence is not conclusive.  But it is the evidence, we think, contemplated by the statute, Code, section 2351, and if so, it is sufficient, in the absence of any evidence to the contrary.

The fact that the will was proved by only one of the sub-

scribing witnesses cannot affect the probate. It would at most be a mere irregularity, and we cannot assume that it was even that. On the contrary, where the courts of a sister state have jurisdiction, their mode of procedure will be presumed to be regular. *Ward v. Baker*, 16 Kan., 31.

We reach the conclusion, then, that there is no valid objection either to the will or the probate thereof. It is objected

3. ——— : title under vests at death of testator.

by the defendants, however, that the admission of the will to probate in the circuit court of Story county was too late. This action, it seems, had already been commenced. The defendants' theory is that at the time the plaintiff commenced her action she had no cause of action. But, in our opinion, the most that can be said is that at that time she merely lacked the means of proof. Her title vested at the death of the testator. To prove it, however, it was necessary for her to put in evidence the will; and to do that, it was necessary that it should be probated, not only in Tennessee, but in Iowa. We think that it was sufficient that the will had been so probated at the time it was offered in evidence.

Possibly the plaintiff, in setting out an abstract of her title, should have shown therein that the will had been probated in the circuit court of Story county. Whether she did so show does not appear, nor is it material. It is sufficient to say that no objection was raised for want of proper abstract of title, and if there was such want, it could not affect the decree.

We come now to inquire as to whether the defendant, J. W. Doty, acquired the legal title to the land by reason of the

4. CONVEY- ANCE: deed: delivery after death of grantor.

alleged conveyance. On this point evidence was introduced by the plaintiff tending to show that the deed was forged. But so far as the question as to the legal title is concerned, it might be conceded that the deed is genuine. It would not have the effect to pass the legal title unless it was delivered. The delivery set up by the defendants in their cross-petition, and upon

which they rely, was not made until February, 1878. The deed was received by the defendant, J. W. Doty, in that month, from some one through the mail. But that was not a delivery by the grantor, for he had died the year previous.

There remains, then, only to be considered whether the defendant, J. W. Doty, had become the equitable owner by purchase and payment. The testimony relied upon by the defendants to show that he had, consists of the alleged declaration of J. R. Doty. They are in effect that he had sold the land to his father, J. W. Doty, and received his pay therefor. But, in our opinion, according to the preponderance of the evidence, such sale did not take place. If the deed was genuine, J. R. Doty might have looked upon the execution of it without delivery, as a completed sale, and might have spoken of it as such. As to what the character of the transaction was, we have to say that it is shown, we think, in part by the testimony of one Loomis, the officer who took the acknowledgment of the deed. He appears to have been wholly disinterested, and one of the most reliable witnesses who testified in the case. He testified that, at the time of the acknowledgment, October, 1874, J. R. Doty, or some person claiming to be J. R. Doty, stated that the grantee had advanced him money, and would pay him three or four hundred dollars more on the delivery of the deed. In connection with this testimony, we have the testimony of one Richard, showing that the money advanced had been advanced by way of loan.

Richard testified that J. R. Doty "told him that he let his father have the land for some money he had borrowed of him." We think, then, that, if the deed was not forged, it was executed with the design of delivering it as a mortgage, to secure one or more loans already made, and one yet to be made, but that the transaction was never completed. Several circumstances tend to support this view. The deed was not recorded until April, 1878, and did not come into the grantee's hands until February of that year. J. R. Doty

*5. REAL estate : equitable ownership: facts not constituting.*

continued to pay the taxes, and J. W. Doty, in a letter to J. R. Doty, in December, 1875, speaks of the land as J. R. Doty's.

If it were shown that J. W. Doty advanced money upon the strength of an agreement on the part of J. R. Doty to make a mortgage, possibly J. W. Doty might be held to have an equitable lien; but we think that the evidence does not show such advancement. There is certainly no evidence that the money previously advanced was advanced upon the strength of such an agreement, and, if there is any evidence that money was advanced at the time of the execution of the deed, it is very slight, and overcome, we think, by the proven conduct of the parties. In our opinion, the decree of the district court must be

AFFIRMED.