IN THE MATTER OF THE ESTATE OF EDWARD BERNHARD, Deceased, HENRY WOLLGAST and CARL WOLLGAST, Appellants, v. AMELIA HENNING, IDA WORDELL ET AL., Residuary Legatees in the Last Will and Testament of Edward Bernhard, Deceased.

Where a testator after devising real estate makes a contract for the sale thereof which is enforcible against him, the conversion from realty into personalty may be completed after his death by payment of the purchase price, even though the contract is executory in character; and the proceeds will be distributed as personalty.

*Appeal from Lee District Court.*— HON. HENRY BANK, JR., Judge.

TUESDAY, JUNE 4, 1907.

APPLICATION in probate by the appellees praying for an order for the distribution of certain funds in the hands of the executor of the estate of Edward Bernhard, deceased.

The appellants claim the fund by virtue of the last will and testament of Edward Bernhard. An order of distribution was made, from which the plaintiffs appeal.— *Affirmed.*

*James Hibben* and *E. C. Weber,* for appellants.

*H. O. Weaver* and *Hollingsworth & Blood,* for appellees.

SHERWIN, J.— Edward Bernhard died in June, 1902, leaving a will, the eighth paragraph of which was as follows: " I give and devise unto Henry Wollgast and Carl Wollgast all the real property I own in Ft. Madison, Lee County, Iowa, share and share alike, excepting my homestead which I hereafter divide." By the tenth paragraph of his will he gave all the rest and residue of his estate to the petitioning appellees herein; thus devising to said petitioners all of his personal estate, aside from certain specific legacies bequeathed in other paragraphs of the will. This will was executed in October, 1901. At the time of the execution of the will, and at the time hereafter mentioned, the deceased was the owner of lots 34, 35, and 36 in Ft. Madison, Iowa, and on the 12th day of April, 1902, he executed a contract, by the terms of which he agreed to sell to the trustees therein named the said lots. Three hundred dollars of the purchase price was paid at the time of the execution and delivery of the contract, and the trustees therein obligated themselves to pay the balance of the purchase price of $2,000, $500 on August 1, 1902, $600 November 1, 1902, and $600 on the 1st of March, 1903. The contract further provided that, upon the completion of the payments therein named, the vendor should execute and deliver a good and sufficient warranty deed of the premises. It further provided that, in the event of the nonpayment of the sums therein provided for or any part thereof, said Bernhard might elect to consider the contract at an end, and " proceed to extinguish the claim " of said trustees as by

law provided.   The bond further stipulated that the trustees therein named were to pay all taxes becoming due upon said land.   There was a default in the deferred payments, and in September, 1903, the executor of Bernhard's estate brought a suit to enforce the contract and to foreclose the title bond as a mortgage.   That action was settled by the vendees named in the bond, accepting a deed to the property and paying the executor the payments called for by the bond, and such settlement was approved by the court.   The appellants intervened in that foreclosure proceeding, claiming the real estate in question by virtue of the eighth paragraph of the will, which we have already set out.   They subsequently acquiesced in the enforcement of the contract and the payment of the money into court, and in this proceeding make claim to the fund received in payment for the land under the terms of the contract.

The legal question presented by this record is whether the money in the hands of the court or the executor is personal property which is to be distributed under the residuary clause of the will, or whether it should be treated as real estate devised by the eighth clause of the will.   The appellants claim that the bond for a deed was an executory contract, and did not pass any title, either legal or equitable; while the appellees contend that there was an equitable conversion of the real estate into personal property, and that such personal property passed upon the death of Bernhard to his executors as personalty.   We do not find it necessary to determine in this particular case whether the bond in question passed even an equitable title to the vendees named therein, although we are inclined to the opinion that, taken as a whole, it may fairly be said to have passed such equitable title.   It is well established in both England and this country that land which is sold or contracted to be sold and turned into money is to be considered as that species of property into which it is directed to be converted, " and this in whatever manner the direction is given, whether by

will or by way of contract, marriage articles, settlement, or otherwise; and whether the money is actually deposited or only contracted to be paid, whether the land is actually conveyed or only to be conveyed, the owner of the fund or the contracting parties may make land money or money land." See 1 Lead. Cas. Eq. 619; *Craig v. Leslie,* 3 Wheat. (U. S.), 563 (4 L. Ed. 460); *Greenland v. Waddell,* 116 N. Y. 234 (22 N. E. 367, 15 Am. St. Rep. 400); Bispham's Principles of Equity, section 307.

Where such conversion is by contract, it is only necessary as a general rule that the contract be enforceable. The question in such cases is whether the vendor or purchaser, as the case may be, at the time of his death, was either absolutely or contingently under such an agreement as equity would enforce against him. Dart on Vendors, 338 (4th Ed.); *Keep v. Miller,* 42 N. J. Eq. 100 (6 Atl. 495); *Williams v. Haddock,* 145 N. Y. 144 (39 N. E. 825). If a contract for sale of land might have been enforced against the vendor had he lived, the conversion from realty into personalty may be completed, even though the vendee has not paid the purchase price, and even though the contract be executory in character. This seems to be the settled rule of the cases relating to equitable conversion. In 2 Story's Eq. Jur. 112, it is said: " So, if a trustee should take property with absolute directions to sell and convert it into money, there, although the directions were not carried into effect during the life of the party creating the trust, the property would be deemed personalty." The same rule is announced in *Boland v. Tierney,* 118 Iowa, 59, and in *Warren v. Taylor,* 56 Iowa, 182. See also, *In re Strang's Estate,* 131 Iowa, 583; *Newport Waterworks v. Sisson,* 18 R. I. 411 (28 Atl. 336).

Under the rule of these cases, where a testator in his will directs a sale of real estate, the property is thereby converted from realty to personalty, and, whenever the sale takes place the proceeds arising therefrom are to be distributed

as personalty.   It is fundamental doctrine that a will speaks from the death of the testator.   And it is also true that, when the title passes under the terms of the contract, it relates back to the date of the contract, and the vendor is treated as holding the legal title as trustee for the purchaser. This result is said to rest upon the principle that equity regards that as done which is agreed to be done.   Story's Eq. Jur., sections 789, 790, 1212 (12th Ed.) ; 1 Pom. Eq. Jur. (2d Ed.), section 368, and cases cited.   The contract under consideration is conclusive evidence of the fact that Bernhard intended to dispose of this land and to receive the purchase money, if the vendees named therein determined to take the land and pay the purchase price.   It is evident, therefore, that he could not have intended that his will should operate upon the land, and that it should go to the appellants in virtue of the eighth clause thereof.   In *Kerr v. Day*, 14 Pa. St. 112 (53 Am. Dec. 526), it is said : " It is settled that an estate under contract of sale is regarded as converted into personalty from the time of the contract, notwithstanding an election to complete the purchase rests entirely with the purchaser, and, if the seller die before the election be exercised, the purchase money when paid will go to the executors as assets."   See, also, on this point, *Farrar v. Winterton*, 5 Beaver, 1.   In *Stevenson v. Polk*, 71 Iowa, 278, the owner of the land had contracted a sale of the same to one Vink, who failing to comply with the terms of the sale, an action of foreclosure was commenced against him by the executor of the vendor, who had died.   Upon foreclosure it was sold by the sheriff to the executor, and he subsequently sold it upon what it was claimed was insufficient authority from the court.   In determining this question this court said:   " Vink was, in effect, a mortgagor, and the mortgage was foreclosed, and the real estate sold and conveyed as above stated.   Such mortgage, and the indebtedness secured thereby, constituted assets of the estate, and as such came into the executor's hands."   See,

also, to the same effect, *Grimmel v. Warner,* 21 Iowa, 11; *Blair v. Marsh,* 8 Iowa, 144; *Hartman v. Clark,* 11 Iowa, 510; *Gamut v. Gregg,* 37 Iowa, 573; *Miller v. Corey,* 15 Iowa, 166; 11 Ency. Law (2d Ed.) 843; *Moore v. Burrows,* 34 Barb. (N. Y.), 173.

We are abidingly satisfied that the district court reached the right conclusion in this case, and its judgment must be and it is *affirmed.*